DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| SOUTHLAND GAMING OF THE VIRGIN ISLANDS, Inc., | ) ) ) ) | |
| Plaintiff, | ) ) | Civil No. 2018-107 |
| v. | ) ) | |
| GOVERNMENT OF THE VIRGIN ISLANDS, KENNETH MAPP | ) ) ) | |
| Defendants, | ) ) ) | |
| VIGL OPERATIONS, LLC, | ) ) | |
| Intervenor. | ) ) | |

**ATTORNEYS:**

**Jason Hicks**
**Mark N Poovey**
Womble Carlyle Sandridge & Rice, LLP
Washington, DC
   *For Southland Gaming of the Virgin Islands, Inc.,*

**Marjorie B. Whalen**
**Christopher Allen Kroblin**
Kellerhals Ferguson Kroblin PPLC
St. Thomas, U.S.V.I.
   *For Southland Gaming of the Virgin Islands, Inc.,*

**Ariel Marie Smith-Francois**
**Kimberly Lynn Cole**
Attorney Generals Office
St. Thomas, U.S.V.I.
   *For the Government of the Virgin Islands,*

**Miles L. Plaskett**
Duane Morris, LLP
   *For VIGL Operations, LLC.*

**ORDER**

**GÓMEZ, J.**

Before the Court is the Motion of VIGL Operations, LLC to intervene in this matter.

## I.    FACTUAL AND PROCEDURAL HISTORY.

Southland Gaming of the Virgin Islands, Inc. ("Southland Gaming") is a Virgin Islands corporation. The Virgin Islands Lottery ("the VI Lottery") is an entity of the Virgin Islands Government ("GVI"). VIGL Operations, LLC ("VIGL")is a company based in the Virgin Islands that operates casinos.

In 2003, Southland Gaming entered into a contract with the GVI to serve as a provider and operator of video lottery terminals ("VLTs") for the VI Lottery ("the VLT Contract"). (Complaint; ECF No. 1 at 1.) The VLT contract only permitted the operation of VLTs on St. Thomas and St. John. The VLT contract is set to expire in 2028. (*Id.* at 2.)

In December, 2016, the Legislature of the Virgin Islands passed legislation authorizing the operation of slot machines by VIGL at the horse racetrack on St. Thomas. (*Id.*) That legislation also allowed then Governor of the Virgin Islands Kenneth Mapp ("Mapp") to award a franchise agreement to VIGL ("the slot machine contract"). Under the slot machine contract,

VIGL was to serve as the operator of the facilities and equipment at the racetrack. (*Id.*)

On December 18, 2018, Southland Gaming filed a complaint in this Court. The complaint alleges that the December, 2016, legislation breached the exclusivity agreement in the Video Lottery Contract between Southland Gaming and the GVI. The complaint alleges two causes of action: a violation of the Revised Organic Act and Article I of the United States Constitution as well as breach of contract. The complaint also seeks a declaratory judgment.

On February 1, 2019, VIGL filed a motion to intervene in this matter. VIGL's motion to intervene was granted by the Magistrate Judge on March 22, 2019.

## II. DISCUSSION

Federal Rule of Civil Procedure 24 ("Rule 24") provides two means by which a plaintiff may intervene in an action: intervention as of right and permissive intervention. *See* Fed. R. Civ. P. 24(a)-(b).

### A. Intervention as of Right

With respect to intervention as of right, Rule 24(a) provides:

> On timely motion, the court must permit anyone to intervene who:

> **(1)** is given an unconditional right to intervene by a federal statute; or
>
> **(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

"A movant seeking to intervene under Rule 24(a)(2) must satisfy the following requirements: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pennsylvania*, 701 F.3d 938, 948 (3d Cir. 2012) (internal quotation marks omitted). "The moving party . . . bears the burden of establishing the right to intervene, and failure to satisfy any one of the four factors justifies denial of the request." *Pennsylvania Gen. Energy Co., LLC v. Grant Twp.*, 658 Fed. App'x 37, 40 (3d Cir. 2016).

### B. Permissive Intervention

With respect to permissive intervention, Rule 24(b) provides:

> On timely motion, the court may permit anyone to intervene who:
> **(A)** is given a conditional right to intervene by a federal statute; or
> **(B)** has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b)(1). Rule 24(b) also provides that, when determining whether to allow permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Unlike intervention as of right, "if the intervention is a permissive one the claim must be supported by independent jurisdictional grounds." *Beach v. KDI Corp.,* 490 F.2d 1312, 1319 (3d Cir. 1974); *see also Blake v. Pallan*, 554 F.2d 947, 955 (9th Cir. 1977) ("The prevailing view of the federal courts is that the claims of permissive Rule 24(b) interveners must be supported by independent jurisdictional grounds.").

## III. <u>ANALYSIS</u>

The VLT contract includes a definition of a Video Lottery Terminal. In pertinent part, paragraph five of the VLT contract describes a VLT as:

> [A]ny machine in which coins, credits or tokens are deposited in order to play any game of chance in which the results including options available to the player are randomly and immediately determined by the machine. A VLT may use spinning reels or video displays or both and may or may not dispense coins or tokens directly to winning players. VLTs may include a progressive jackpot either individually, in a linked cluster of machines in one location, or in a linked clusters of machines in multiple locations.

(VLT Contract; ECF No. 1-1 at 3.)

Southland Gaming essentially alleges that the definition of a VLT subsumes machines such as the slot machines permitted by the slot machine contract. Thus, a seminal issue that must be determined in this case is: what understanding of the definitional and functional breadth of VLT machines did the parties reasonably have at the time they entered into the VLT contract.

The resolution of this issue necessarily implicates the application of contract interpretation principles. In applying those principles, courts strive to determine the intent of the *parties* to a contract. *See Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009 ("The paramount goal of

contract interpretation is to determine the intent of the parties.") (quotation omitted). Significantly, VIGL had not entered into a contract with the GVI at the time the Video Lottery contract was entered into. Also, VIGL is not a party to the Video Lottery contract. It is unclear what role VIGL would play in an inquiry focused on the intent of the parties to the VLT contract when VIGL was not a party to that contract, or any contract with the GVI at that time.

The Third Circuit has recognized that, in some cases, it may be necessary for a court to determine whether a proposed intervenor should be allowed to intervene at the merits phase of the litigation, or whether the proposed intervenor should only intervene at the remedy phase. *Brody v. Spang*, 957 F.2d 1108, 1116 (3d Cir. 1992). "Given the nature of an applicant's interest, he or she may have a sufficient interest to intervene as to certain issues in an action without having an interest in the litigation as a whole." *Harris v. Pernsley,* 820 F.2d 592, 599 (3d Cir. 1987).

In *Benjamin v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 951 (3d Cir. 2012), a group of individuals attempted to intervene in a class action suit. In that case, the Third Circuit noted that a proposed intervenor "need not possess an interest in each and every aspect of litigation." *Benjamin*, 701

F.3d at 951 (citation omitted). At the same time, a proposed intervenor may be "entitled to intervene as to specific issues so long as their interest in those issues is significantly protectable." *Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 368 (3d Cir. 1995) (citation omitted). To that end, the Third Circuit has stated that it is appropriate to conduct a two-step inquiry to first evaluate whether the proposed intervenor has a right to intervene at the merits stage and then whether the proposed intervenor may participate in the remedial stage. *Benjamin*, 701 F.3d at 951.

The Court questions whether VIGL's presence is necessary at this stage of the case where the primary issue to be determined, at its core, is a dispute, the resolution of which, calls into question the intent of the GVI and Southland Gaming. While the Magistrate Judge has already granted VIGL's motion to intervene, the record does not indicate whether intervention at a later stage of the litigation was considered. Indeed, on its face, given the seminal definitional question presented in Southland Gaming's complaint, the "two-step" inquiry endorsed by the Third Circuit in *Benjamin* may have great utility here.

The premises considered; it is hereby

**ORDERED** that the Magistrate Judge shall review whether intervention by VIGL would be more appropriate if granted at the remedial stage of the case.

                                                                    S\_____
                                                                      **Curtis V. Gómez**
                                                                      **District Judge**