DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|                                              |   |                      |
|----------------------------------------------|---|----------------------|
| SOUTHLAND GAMING OF THE VIRGIN ISLANDS, Inc.,| ) |                      |
|                                              | ) |                      |
| Plaintiff,                                   | ) | Civil No. 2018-107   |
|                                              | ) |                      |
| v.                                           | ) |                      |
|                                              | ) |                      |
| GOVERNMENT OF THE VIRGIN ISLANDS, KENNETH MAPP | ) |                    |
|                                              | ) |                      |
| Defendants,                                  | ) |                      |
|                                              | ) |                      |
| VIGL OPERATIONS, LLC,                        | ) |                      |
|                                              | ) |                      |
| Intervenor.                                  | ) |                      |

**ATTORNEYS:**

**Jason Hicks**
**Mark N Poovey**
Womble Carlyle Sandridge & Rice, LLP
Washington, DC
　　*For Southland Gaming of the Virgin Islands, Inc.,*

**Marjorie B. Whalen**
**Christopher Allen Kroblin**
Kellerhals Ferguson Kroblin PPLC
St. Thomas, U.S.V.I.
　　*For Southland Gaming of the Virgin Islands, Inc.,*

**Denise N. George, AG**
**Ariel Marie Smith-Francois, AAG**
**Kimberly Lynn Cole, AAG**
Attorney General's Office
St. Thomas, U.S.V.I.
　　*For the Government of the Virgin Islands,*

**Miles L. Plaskett**
Duane Morris, LLP
　　*For VIGL Operations, LLC.*

**ORDER**

**GÓMEZ, J.**

Before the Court is the issue of whether the "slot machines" contemplated in Virgin Islands Act No. 7952 and/or Virgin Islands Act No. 7953 are the functional equivalent of "video lottery terminals" contemplated in the July 29, 2003, Agreement (or its 2013 amendment) between the Virgin Islands Government and Southland Gaming of the Virgin Islands, Inc.

### I. FACTUAL AND PROCEDURAL HISTORY.

Southland Gaming of the Virgin Islands, Inc., ("Southland") is a Virgin Islands corporation. The Virgin Islands Lottery ("the VI Lottery") is an entity of the Virgin Islands Government ("GVI"). VIGL Operations, LLC, ("VIGL") is a company based in the Virgin Islands that operates casinos.

In 2002, the Virgin Islands Legislature authorized the VI Lottery Commission to operate a lottery in the St. Thomas/St. John district through "video lottery gaming machines or devices, or any similar type of gaming machine or device." 32 V.I.C. § 246(a)(1); 2002 V.I. Sess. Laws 6590, § 1. In response, the VI Lottery began working with Southland to procure video gaming devices.

In 2003, Southland entered into a contract with the GVI, under which Southland would "design, install and operate a video

lottery control system, maintain and operate entertainment centers which primarily offers video lottery games and services and maintain video lottery terminals [("VLTs")] and other related equipment in all applicable locations" in the St. Thomas/St. John district (the "VLT contract"). *See* ECF No. 1, Exh. 1 at 1. The VLT contract provided that the GVI "shall not contract with any other party for delivery or management of [VLTs] . . . or any other video lottery services including any equipment, machines, software or operational services and [Southland] shall be the exclusive supplier to the [GVI] of such VLTs and related services." *See id.* at 3. The VLT contract defined VLTs as

> any machine in which coins, credits or tokens are deposited in order to play any game of chance in which the results including options available to the player are randomly and immediately determined by the machine. A VLT may use spinning reels or video displays or both and may or may not dispense coins or tokens directly to winning players. VLTs may include a progressive jackpot either individually, in a linked cluster of machines in one location, or in a linked cluster of machines in multiple locations.

*Id.* The VLT contract is set to expire in 2028.

In October of 2016, the GVI entered into a contract with VIGL, under which VIGL was to "promote and conduct horseracing and related activities in the United States Virgin Islands" (the "slot machine contract"). ECF No. 156, Exh. 10 at 8. Under the

slot machine contract, VIGL was required to maintain at the St. Thomas racetrack, among other things, "a racino featuring slot machines and other games of chance." *See id.* at 21.

In December of 2016, the Legislature of the Virgin Islands passed Act 7952, which authorized the operation of slot machines and "disallow[ed] [VLTs]" at that St. Thomas racetrack. *See* 2016 V.I. Sess. Laws 7952, § 2. The Legislature also passed Act 7953, which approved the slot machine contract the GVI previously entered into with VIGL.

At the time VIGL and the GVI executed the slot machine contract, the relevant Virgin Islands statute defined "slot machine" as

> Any mechanical, electrical or other device, contrivance or machine which, upon insertion of a coin, token or similar object therein, or upon payment of any consideration whatsoever, is available to play or operate, the play or operation of which, whether by reason of the skill of the operator or application of the element of chance, or both, may deliver or entitle the person playing or operating the machine to receive cash or tokens to be exchanged for cash or to receive merchandise or any thing of value whatsoever, whether the payoff is made automatically from the machine or in any other manner whatsoever . . . .

32 V.I.C. § 402(68) (2016). Act 7952 added the following caveat to that definition: "The term does not include a Video Lottery Terminal." *Id.*

On December 18, 2018, Southland filed a complaint against the GVI in this Court alleging that the December 2016 legislation breached the exclusivity agreement in VLT contract. Southland's complaint includes two causes of action: (1) a violation of the Revised Organic Act and Article I of the United States Constitution; and (2) breach of contract.

On November 19, 2019, the Court held a hearing in this matter. At the hearing, the parties agreed that this matter was to be tried in a bench trial. At the conclusion of the hearing, the Court ordered that the trial in this matter would be bifurcated into a merits phase and a remedial phase.

With respect to the merits phase, the Court scheduled a trial for February 20, 2020, to address an issue implicated in the merits phase (the "VLT Function Trial"), that is:

> Whether the "slot machines" contemplated in Virgin Islands Act No. 7952 and/or Virgin Islands Act No. 7953 are the functional equivalent of "video lottery terminals" contemplated in the July 29, 2003, Agreement (or its 2013 amendment) between the Virgin Islands Government and Southland Gaming of the Virgin Islands, Inc.

ECF No. 122 at 2. The Court scheduled a trial on the merits of any remaining issues for June 1, 2020.

On November 27, 2019, the Southland and the GVI filed a joint motion to amend the Trial Management Order in this matter. Southland and the GVI proposed that the merits phase be tried on

a stipulated record and suggested a discovery and briefing schedule that would culminate with dispositive briefs filed on August 1, 2020, and responses filed on September 1, 2020.

On February 14, 2020, the Court granted the motion to amend the Trial Management Order in part and ordered that the VLT Function Trial would be decided on the parties' written submissions. The Court canceled the February 20, 2020, VLT Function Trial and ordered the parties to submit relevant briefs and supporting evidence. The parties did so.

## II. DISCUSSION

Southland asserts that the definition of a VLT in the VLT contract is broad enough to include slot machines, and as such, VLTs are the functional equivalent of slot machines. As a consequence of the broad definition, Southland argues that its exclusive contract right to maintain and operate VLTs in the St. Thomas/St. John district has been imnpaired by Act 7952, Act 7953, and the slot machine contract.

In support of its petition, Southland directs the Court to the VLT contract. In pertinent part, the VLT contract defines VLTs as

> any machine in which coins, credits or tokens are deposited in order to play any game of chance in which the results including options available to the player are randomly and immediately determined by the machine. A VLT may use spinning reels or video displays or both and may or may not dispense coins

> or tokens directly to winning players. VLTs may include a progressive jackpot either individually, in a linked cluster of machines in one location, or in a linked cluster of machines in multiple locations.

ECF No. 1, Exh. 1 at 3.

The Virgin Islands Code defines "slot machine" as

> Any mechanical, electrical or other device, contrivance or machine which, upon insertion of a coin, token or similar object therein, or upon payment of any consideration whatsoever, is available to play or operate, the play or operation of which, whether by reason of the skill of the operator or application of the element of chance, or both, may deliver or entitle the person playing or operating the machine to receive cash or tokens to be exchanged for cash or to receive merchandise or any thing of value whatsoever, whether the payoff is made automatically from the machine or in any other manner whatsoever . . . .

32 V.I.C. § 402(68).

The GVI argues that VLTs are distinguishable from slot machines because a game on a slot machines may be won by the "application of the skill of the operator," 32 V.I.C. § 402(68), while a VLT is solely a "game of chance," ECF No. 1, Exh. 1 at 3. The GVI presumes that, because a player may apply some "skill" when playing a machine game that determines a winner through an algorithm, that this machine game cannot be a "game of chance." The GVI's reliance on this presumption is flawed.

The term "game of chance" refers to a wide range of activities, including various games "played with dice, cards,

slot machines, [and] video gaming devices or machines." *See* 14 V.I.C. § 1224. Significantly, that a game is a "game of chance" does not mean the odds of winning cannot be somewhat altered by an application of skill. Indeed, state courts have overwhelmingly found that video gaming devices that rely in part on skill are still "games of chance" under the relevant state law as long as chance is still a significant element in the game's operation. *See United States v. Dobkin,* 423 S.E.2d 612, 614 (W. Va. 1992) ("[A]lthough there is some element of skill involved, poker or any electronic simulation thereof, is a game of chance."); *Garono v. State*, 37 Ohio St. 3d 171, 175 (1988) ("The fact that an element of skill may be involved in a game does not override the fact that elements of chance exist and, therefore, the game can be classified as a game of chance."); *Com. v. Two Elec. Poker Game Machines*, 502 Pa. 186, 195 (1983) ("While appellee has demonstrated that some skill is involved in the playing of Electro-Sport, we believe that the element of chance predominates and the outcome is largely determined by chance. ").

The GVI also argues that a lottery "must be 'among persons who have paid' valuable consideration for the chance to win. In other words, the participants are pooled together and are competing against one another rather than competing against the

casino or house." ECF No. 157 at 9-10 (quoting 14 V.I.C. § 1221). The GVI points to no requirement--either statutory, regulatory, or through the VLT contract--that VLTs must be operated in this manner. Further, the GVI points to no evidence that slot machines are not operated in such a manner.

With respect to the situation on the ground--the actual operation of VLTs and slot machines in the Virgin Islands--VLTs and slot machines appear to be indistinguishable. In support of their claim, Southland provided declarations from Robert E. Huckabee III ("Huckabee"), Southland's President and CEO, and Shaine Gaspard ("Gaspard"), Southland's Executive Vice President and Chief Operating Officer.

Gaspard and Huckabee are both familiar with the machines used as slot machines in St. Croix and the machines used as VLTs in St. Thomas. They averred that slot machines and VLTs are both "electronic games, played by putting money in the machine, watching the video display of the machine, and then, based on chance, potentially winning a prize." *Robert E. Huckabee III Decl.*, ECF No. 156, Ex. 3 at ¶ 6. The VLTs and slot machines in the U.S. Virgin Islands both

> utilize[] the same types of machines, which were often manufactured by the same manufacturers, operate[] using the same software and operating system housed in an external cabinet, use[] software that was programmed to display graphics that generated themes and subthemes and that controlled

>outcomes based on programmed algorithms, made accounting data from each machine available through a Slot Accounting System (SAS) and the game management unit port on the machine, provide[] an identical user interface operated by the insertion of U.S. currency with winnings paid out using validation tickets, and allowe[] for play of games certified by Gaming Labs International ("GLI").

Id. at ¶ 4. In fact, many of machines being operated as slot machines operated on St. Croix are the exact same machines operated as VLTs in St. Thomas, and any of the remaining machines being operated as slot machines could "simply be taken off a casino floor [in St. Croix] and placed by Southland at a lottery retailer [as a VLT] and put into use." *Shaine Gaspard Decl.*, ECF No. 156, Ex. 4 at ¶ 14.

The GVI does not dispute the content of these declarations. Rather, the GVI argues that the language of Act 7952 excluding VLTs from the definition of slot machine, as well as the language in the slot machine contract, preclude the breach or impairment of which Southland complains.

While it has some Orwellian appeal, akin to "All animals are equal, but some animals are more equal than others,"[1] the GVI's argument is wanting. Saying something is so does not necessarily make it so. To illustrate the point, one can imagine a government contractor having an exclusive contract to supply

---

[1] GEORGE ORWELL, ANIMAL FARM 133 (New American Library 1996) (1946).

pens, which contract describes a pen as a handheld cylindrical tool with an inner storage cartridge for ink that is used to make ink markings. Now imagine a second government contractor had an exclusive contract to provide writing instruments described as handheld cylindrical tools with an inner storage cartridge for ink that is used to write in ink. A caveat in the second contract that writing in ink is not making an ink marking, and that a pen is not a writing instrument, would not avoid the legal conclusion that a writing instrument functions like a pen.

 The slot machine contract and Act 7952 attempted to avoid the problem in the illustration. The attempt fails.

 Finally, the "primary purpose" of contract interpretation, "is to ascertain and give effect to the parties' objective intent." *Phillip v. Marsh-Monsanto*, 66 V.I. 612,625 (2017). "Where the language of a contract is clear and unambiguous, the parties' intent must be derived from the plain meaning of its terms." *Id.; see also Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir. 1994) (discussing "plain meaning rule of interpretation of contracts which assumes that the intent of the parties to an instrument is "embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the

agreement" (internal quotation marks omitted)). In construing a contract's terms, the Court must look to the document "as a whole." *See* Restatement (Second) of Contracts § 202(2).

Of course, the intent the Court is concerned with is the parties "mutual intent at the time of contracting." *See Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011). Here, as the Court discussed above, the language of the VLT contract clearly contemplates a breadth not appreciated today by the GVI. The GVI's failure to appreciate today may be more an effort to provide a *post hoc* rationalization for its execution of the slot machine contract than a reflection of the GVI's intent at the time of the VLT contract. Indeed, the Court finds it noteworthy that George W.H. Phillips ("Phillips"), the attorney charged with negotiating the VLT contract on behalf of the GVI, has provided a sworn statement that "[d]uring the negotiations and execution of the [VLT contract], it was the understanding and express intent of the Government, including the Governor's office and the Virgin Islands Lottery, that Southland was to be the sole provider and operator of video gaming machines on St. Thomas and St. John." *See George W.H. Phillips Decl.*, ECF No. 156, Ex. 1 at ¶ 7. Phillips further clarified that "[w]hen negotiating the [VLT contract], it was understood by all parties that Southland would

have the exclusive right to operate video gaming machines in St. Thomas and St. John, *regardless of whether the machines are called video lottery or slot machines*." *Id.* at ¶ 9 (emphasis added). That understanding clearly indicates that VLTs were contemplated to be gaming machines, whether identified as VLTs or slot machines, to be operated in St. Thomas and St. John exclusively by Southland. The GVI has offered no similar record evidence nor any evidence equivalent to the Phillips declaration. Rather, the GVI's argument is that the legal authority, and indeed, *raison d'être* for VIGL slot machines in St. Thomas and St. John is found in the language of Act 7952 and 7953. That argument misses the mark as it ignores a key point-- the GVI gave VIGL the right to operate gaming machines, which right the GVI had previously given exclusively to Southland. The language of the slot machine contract, Act 7952, and Act 7953 did not obviate that conclusion, even if the language claims it did.

In sum, the machines utilized as VLTs and slot machines are both electronic machines that offer an opportunity to win a prize by playing a game of chance in exchange for money. VLTs and slot machines function in the same manner, are interchangeable, and in many cases are in fact identical machines. Accordingly, the Court holds that the slot machines

contemplated in Virgin Islands Act No. 7952 and Virgin Islands Act No. 7953 are the functional equivalent of the VLTs contemplated in the VLT contract between the GVI and Southland.

The United States Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. Art. I, § 10, cl. 1. The Revised Organic Act incorporates the federal Contracts Clause, providing that "[n]o law impairing the obligation of contracts shall be enacted." Rev. Org. Act of 1954 § 3, cl. 6., (codified at 48 U.S.C. § 1561); *WICO, Ltd. v. Gov't of the V.I.,* 844 F.2d 1007, 1009 (3d Cir. 1988) (explaining that the contract clause of the United States Constitution is "incorporated into Virgin Islands law by § 3 of the Revised Organic Act").

To prevail on a Contracts Clause claim, "a plaintiff must demonstrate that a 'change in state law has operated as a substantial impairment of a contractual relationship.'" *Transp. Workers Union, Local 290 ex rel. Fabio v. SEPTA,* 145 F.3d 619, 621 (3d Cir.1998) (quoting *GM Corp. v. Romein,* 503 U.S. 181, 186 (1992)). To determine whether a party has met that burden, the Court must make "three threshold inquiries: (1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the

impairment is substantial." *Transp. Workers Union,* 145 F.3d at 621.

If the Court determines that "a substantial impairment of a contractual relationship has occurred," the Court must then "further inquire whether the law at issue has a legitimate and important public purpose and whether the adjustment of the rights of the parties to the contractual relationship was reasonable and appropriate in light of that purpose." *Id.* Ordinarily, where the impaired contract is between private parties, "the court will defer to the legislative judgment concerning the importance of the public purpose and the manner in which that purpose is being pursued." *Id.* However, where, as here, the state is a party to the contract, "complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake." *U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 26 (1977).

The Court finds that there was a contract between the GVI and Southland, that Act 7952, which permitted the operation of slot machines on St. Thomas, constituted a substantial impairment of the parties' relationship under that contract, and that this impairment was not reasonable or appropriate in light of any purpose served by Act 7952. By authorizing VIGL to operate slot machines on St. Thomas, the GVI impaired the

exclusive contract that the GVI had with Southland, breaching the contract and violating the Contracts Clause of the United States Constitution.

The premises considered, it is hereby

**ORDERED** that the trial in this matter previously scheduled for June 1, 2020, is **CANCELED**; it is further

**ORDERED** that the remaining merits issues in this matter shall be tried on the written submissions of the parties; and it is further

**ORDERED** that no later than May 4, 2020, the parties shall each file briefs, together with all supporting evidence, addressing any remaining issues relevant to liability.

S\_____
    **Curtis V. Gómez**
    **District Judge**