IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| SOUTHLAND GAMING OF THE VIRGIN ISLANDS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS AND GOVERNOR ALBERT BRYAN, IN HIS OFFICIAL CAPACITY, <br><br> Defendants. | Civil No. 2018-107 |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendant Government of the Virgin Islands' ("GVI") "Motion For Protective Order or, in the Alternative, to Quash Notice of Deposition of Governor Albert Bryan, Jr." [ECF 232]. Plaintiff Southland Gaming of the Virgin Islands, Inc. ("Southland") opposes the motion [ECF 238], and the GVI replied [ECF 239].

**I.   BACKGROUND**

On July 29, 2003, plaintiff Southland entered into an agreement, the Video Lottery Agreement, with the GVI. Compl. [ECF 1] ¶ 15. According to plaintiff, "[t]he Video Lottery Agreement prohibits [the U.S. Virgin Islands] from contracting with other individuals or entities for video lottery machines or services on St. Thomas," U.S. Virgin Islands. *Id.* ¶ 27. On December 1, 2016, the Virgin Islands legislature passed, and then-Governor Kenneth E. Mapp signed, the Virgin Islands Horse Racing Industry Assistance Act of 2016 ("the Racino Act"). *Id.* at Ex. D. That same day, the legislature also passed Virgin Islands Act 7953 ("Act 7953"), which formally

*Southland Gaming v. GVI, et al.*
Civil No. 2018-107
Page 2

approved the VIGL Operations, LLC ("VIGL") Franchise Agreement. *Id.* at Exs. C, E. Under the Franchise Agreement, VIGL was authorized to operate slot machines on St. Thomas. *Id.* at Ex. E.

On December 18, 2018, Southland brought the underlying action against the GVI and then-Governor Mapp, in his official capacity. Compl. [ECF 1]. In a nutshell, Southland claims that by passing the Racino Act and Act 7953, and approving the VIGL Franchise Agreement, defendants violated the terms of the Video Lottery Agreement which, according to plaintiff, designated Southland the exclusive provider of video lottery terminals ("VLTs") on the U.S. Virgin Islands of St. Thomas and St. John. *Id.* ¶¶ 1, 4. The GVI filed their answer on February 23, 2019. [ECF 23].

On April 10, 2020, the District Court issued an order making certain findings with respect to the issue of whether "slot machines" as used in the Racino Act and related legislation are the functional equivalent of "video lottery terminals" as used in the Video Lottery Agreement. [ECF 162] at 13-14. Thereafter, and purportedly in response to that decision, the GVI moved to amend its answer to raise the following affirmative defenses: (1) the Video Lottery Agreement is illegal, (2) the operation of Southland's machines is illegal, and (3) the GVI is not in breach of the Video Lottery Agreement because the VIGL Franchise Agreement "does not provide that VIGL will be providing VLTs or its related services to the Government of the Virgin Islands." [ECF 205-1] ¶¶ 5, 6, 10. On November 16, 2020, the Court granted that motion. [ECF 225].

Southland now wishes to depose current Virgin Islands Governor Albert Bryan, Jr., who was inaugurated in January 2019, and was thereafter substituted as a named defendant for former Governor Mapp. *See* [ECF 122] at 1 n.1. The parties have discussed the proposed areas of inquiry, and based on those discussions, the GVI seeks a protective order to bar that deposition from taking place.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 26 provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Under subsection (c), "[a] party or any person from whom discovery is sought may move for a protective order," which "[t]he court may, for good cause, issue . . . to protect [such] party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

The Court of Appeals for the Third Circuit has not yet ruled on the issue of discovery directed to high ranking government officials. However, in *United States v. Sensient Colors*, the District Court for the District of New Jersey, relying on *United States v. Morgan*, 313 U.S. 409, 422 (1941),[1] as construed by various Circuit Courts of Appeal, adopted the principle "that current high-ranking government officials should not be subject to the taking of depositions absent extraordinary circumstances." 649 F. Supp. 2d 309, 316 (D.N.J. 2009) (citing *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) and cases cited therein). The logic behind this principle is that absent such "extraordinary circumstances, good cause exists to preclude the deposition of a high level government official because there is a public policy interest in ensuring that high level

---

[1] In *Morgan*, the Secretary of Agriculture was called at trial to testify regarding an order he issued setting maximum rates to be charged by market agencies for their services at stockyards. 313 U.S. at 413, 421-22. The Supreme Court determined that the Secretary of Agriculture should not have been required to testify because "it was not the function of the court to probe the mental processes of the Secretary." *Id.* at 422 (quotation marks omitted). The Supreme Court further noted that judges are not subjected to such scrutiny, and likewise, "the integrity of the administrative process must be equally protected." *Id.*

*Southland Gaming v. GVI, et al.*
Civil No. 2018-107
Page 4

government officials are permitted to perform their official tasks without disruption or diversion." *Buono v. City of Newark*, 249 F.R.D. 469, 471 n.2 (D.N.J. 2008) (citations omitted);[2] *accord Summerville v. Gregory*, 2017 WL 3208346, at *2 (D.N.J. July 27, 2017); *Johnson v. Attorney General of State of New Jersey*, 2015 WL 4915611, at *2 (D.N.J. Aug. 18, 2015).

When determining if extraordinary circumstances exist, courts must consider whether the party seeking the deposition has shown:

> (1) that the official's testimony is necessary to obtain relevant information that is not available from another source; (2) the official has first-hand information that could not be reasonably obtained from other sources; (3) the testimony is essential to that party's case; [(4)] the deposition would not significantly interfere with the ability of the official to perform his government duties; and [(5)] that the evidence sought is not available through any alternative source or less burdensome means.

*Buono*, 249 F.R.D. at 471 n.2; *see also Holt v Commonwealth of Pa.*, 2020 WL 435752, *2 (M.D. Pa. Jan. 28, 2020). Further, although ordinarily the burden to justify a protective order is on the moving party, in this case, the party seeking to depose a high-ranking government official must demonstrate the existence of extraordinary circumstances. *Sensient Colors*, 649 F. Supp. 2d at 322.

---

[2] The court in *Buono* noted:

> [T]his rule is based on the notion that high ranking government officials have greater duties and time constraints than other witnesses and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation. These interests require the requesting party to show that the deposition is likely to lead to the discovery of admissible evidence and thus, mere knowledge or awareness of information that may be helpful if discovered, and even an official's *pro forma* approval of a matter without showing deliberations about it, will not justify ordering a deposition of the official.

*Buono*, 249 F.R.D. at 471 n.2 (quotation marks and citations omitted).

*Southland Gaming v. GVI, et al.*
Civil No. 2018-107
Page 5

### III. DISCUSSION

Here, plaintiff argues that Governor Bryan has "personal knowledge and involvement in this dispute." [ECF 238] at 1. Southland contends that the "Governor has highly relevant personal knowledge because he is the head of the Executive Branch of the Government of the Virgin Islands," and that "[u]nder his supervisory control is both the Virgin Islands Lottery and the Attorney General's Office." *Id*. at 3. Therefore, according to Southland, it should be able to question Governor Bryan regarding "the actual position of the Government" on the issue of the "newly asserted" affirmative defense of illegality and the "motive behind any change in the Government's position." *Id*. Further, Southland seeks to "ask the Governor about the financial consequences to the Government should the Court accept the Governor's new argument that video lottery is illegal." *Id*. at 4. Southland also wishes to depose the Governor to determine "whether the Government is retaliating against Southland for filing this action." *Id*. at 5. Finally, Southland contends that news reports indicate that Governor Bryan has been in communication with VIGL regarding VIGL's future plans and performance under the Franchise Agreement, as well as in connection with mediation of this case. *Id*. at 6-8.

The Court finds that Southland has not shown the existence of extraordinary circumstances. First, plaintiff has failed to demonstrate that Governor Bryan has any direct personal knowledge regarding the gravamen of Southland's complaint—that the enactment of the Racino Act and Act 7953, and the approval of the VIGL Franchise Agreement violated the terms of the Video Lottery Agreement—all of which occurred years prior to Governor Bryan's inauguration. Southland's list of the Governor's after-the-fact activities does not alter this conclusion.

Second, many of the issues Southland says it wishes to inquire about simply have no relevance to Southland's underlying constitutional and contract claims. Southland makes no

*Southland Gaming v. GVI, et al.*
Civil No. 2018-107
Page 6

showing of how the GVI's "motive" in raising the illegality defense or how its arguing illegality is in "retaliation" for Southland bringing this lawsuit, are at all relevant to any of the claims in the complaint.

Nor is Southland's lament that there are "few fact witnesses in this case" compelling enough to permit a deposition of Governor Bryan. To the extent Southland wishes to explore the Governor's discussions with VIGL and VIGL's performance under the Franchise Agreement, Southland can ask VIGL about these areas directly. Further, aspects of the "illegality" argument might be explored with members of the Casino Control Commission. Southland simply has not shown that Governor Bryan's testimony is necessary or essential to its case, or that Governor Bryan is the only source for the evidence Southland seeks.

In sum, the Court finds that plaintiff has not established extraordinary circumstances which would justify the Court's allowing it to depose the Governor in this matter. Accordingly, the Court concludes that the government has shown good cause for the issuance of a protective order barring Governor Bryan's deposition, and that plaintiff has failed to undermine this showing.

For the foregoing reasons, IT IS HEREBY ORDERED that the government's motion for a protective order [ECF 232] is GRANTED.

**Dated:** December 7, 2020                     S\ _____
                                                                    **RUTH MILLER**
                                                                    United States Magistrate Judge